# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| SUSAN HANCOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:09-cv-343 |
| | ) | |
| ST. JOSEPH COUNTY and | ) | |
| THE ST. JOSEPH COUNTY | ) | |
| COMMUNITY CORRECTIONS | ) | |
| PROGRAM, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on the: (1) St. Joseph County and the St. Joseph County Community Corrections Program's Motion for Summary Judgment, filed by Defendants on February 7, 2011 (DE #33); and (2) Defendants, St. Joseph County and the St. Joseph County Community Corrections Program's Motion to Strike, filed by Defendants on March 10, 2011 (DE #42). For the reasons set forth below, the motion to strike (DE #42) is **DENIED**. Additionally, the motion for summary judgment (DE #33) is **GRANTED**. The Clerk is hereby **ORDERED** to **DISMISS** Amended Complaint Count Nos. I-VI against Defendants, St. Joseph County and the St. Joseph County Community Corrections Program, **WITH PREJUDICE**. The Clerk is also **ORDERED** to **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claim for breach of

contract (Am. Compl. Count VII).  Additionally, the Clerk is **ORDERED** to **CLOSE** this case.

BACKGROUND

Plaintiff, Susan Hancock, filed an amended complaint in this case alleging that St. Joseph County and the St. Joseph County Community Corrections Program (collective "Defendants"), violated her federal constitutional rights pursuant to 42 U.S.C. § 1983, breached its employment contract with Hancock by terminating her without good cause, discriminated against her because of her race and sex in contravention of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000 *et seq.*, and discriminated against her due to her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

Defendants filed the instant motion for summary judgment on February 7, 2011, arguing that Hancock's employment was terminated for legitimate, non-discriminatory reasons, which also constituted cause for termination under her employment contract.  Hancock filed a brief in opposition on February 23, 2011.  Defendants then filed a reply on March 10, 2011.  Consequently, this motion is fully briefed and ready for adjudication.

Defendants also filed a motion to strike portions of the statements and arguments in Plaintiff's response and supporting

documents, arguing they are inadmissible under the Federal Rules of Civil Procedure and Evidence.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but

must set forth specific facts showing that there is a genuine issue for trial. *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Motion to Strike

Defendants have filed a motion to strike, arguing portions of the statements and arguments in Plaintiff's Response are inadmissible under the Federal Rules of Civil Procedure and the Federal Rules of Evidence and, therefore, should be stricken. A party who wishes to argue that portions of a statement of genuine issues contain errors or are inadmissible on evidentiary grounds may file a motion to strike those portions of the statement of genuine issues. *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997). "Pleadings that do not conform with the local rules may be stricken at the discretion of the court." *Id*. at 640 (citing *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990); *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985); *Graham v. Security Sav. & Loan*, 125 F.R.D. 687, 688-89 (N.D. Ind. 1989)). More importantly, it is the function of a court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement. *See, e.g.*, *S.E.C. v. KPMG LLP*, 412 F.Supp.2d 349, 392 (S.D.N.Y. 2006); *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, No. 03 C 2249, 2004 WL

2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F.Supp.2d 917, 920 n.1 (N.D. Ind. 2004).

In this case, Defendants argue that certain evidence, as detailed in their memorandum of law, should be stricken pursuant to Federal Rule of Civil Procedure 12(f) because it is immaterial, remote, irrelevant, inflammatory, and scandalous. (Mem. Of Law In Supp. Of Defs.' Mot. To Strike, DE #43, p. 2.) Motions to strike are heavily disfavored, and usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp.2d 690, 695 (N.D. Ind. 2009); *Gaskin v. Sharp Elec. Corp.*, No. 2:05-CV-303, 2007 WL 2228594, at *1 (N.D. Ind. July 30, 2007). Certainly, this Court can give the personnel records of the other employees and other employment records the credit to which it is due, without the need to employ a motion to strike. The Court is able to sift through the evidence and to consider each piece under the applicable federal rules, thus there is no need to strike any part of Plaintiff's Response. Accordingly, the Court denies the motion to strike as unnecessary.


Undisputed Facts

Plaintiff Hancock is a Caucasian female born in 1966, who is a Republican. She started working for Defendants on August 11, 2003, and on that day, entered into a written employment contract for the Director of Community Corrections at the St. Joseph County

6

Community Corrections Program. (Hancock Dep., p. 13; Pl.'s Ex. F, Contract.) Section (B) of the Employment Agreement (which was entered into between Plaintiff and the St. Joseph County Community Corrections Program Advisory Board, with the approval of the Board of Commissioners of St. Joseph County), states in pertinent part that "this Agreement may be terminated for cause by a majority vote of the SJCCCP Advisory Board, subject to approval of the Board of Commissioners of St. Joseph County." (Pl.'s Ex. F, Contract.) "Cause" has 8 definitions, including "lack of confidence in ability to perform job functions." *Id.*

After she started as the Director of Community Corrections, Hancock also assumed the duties as the Manager of the Ducomb Center. (Hancock Dep., pp. 41-42.) As Director of Community Corrections, Hancock's office was in the courthouse, and she largely worked as a liaison to other outside agencies and community corrections programs, and she managed a recidivism study. (*Id.*, p. 43.) The purpose of the Ducomb Center is to manage offenders and help them integrate back into society. (*Id.*, p. 48.) As the Manger of the Ducomb Center, Hancock was more hands-on, and oversaw the work release facility and home detention reporting programs. (*Id.*, p. 43; Pl.'s Ex. G, Job Description.)

Before her ultimate termination, Hancock was never formally disciplined by Defendants. (Kostielney Dep., p. 15.) On July 17,

2007, the Advisory Board gave her a favorable annual evaluation, praising her commitment to the job, strong program administration skills, and proactive leadership style. (Pl.'s Ex. I, Letter & Evaluation.) Hancock received a rating of 4.5 out of 5, which placed her between "outstanding" and "above average." *Id.*

On June 23, 2008, Hancock and her husband were charged with crimes. Specifically, Hancock was charged with receiving stolen property, a Class D felony. (Am. Answ. ¶ 27; Hancock Dep., pp. 19-21.) Defendants suspended Hancock on June 23, 2008, without pay. (Am. Answ. ¶ 28.) Although Defendants claim to have placed Hancock on unpaid suspension pursuant to a written county policy, Defendants failed to identify the particular policy at issue. (Kovach Dep., pp. 38, 47-48; Kostielney Dep., pp. 35-38.) Hancock handed in her work place keys and identification because she did not know what action might be taken against her. (Hancock Dep., p. 21.) After the suspension, Phyllis Emmons, Defendants' Human Resources Director, represented to the State of Indiana that Hancock was expected to return to work "pending trial results." (Pl.'s Ex. J, Workforce Development.) On May 4, 2009, Defendants ended Hancock's health insurance, identifying the qualifying event as "Termination on April 30, 2009." (Pl.'s Ex. K, Insurance Documents; Kovach Dep., p. 64.)

On May 29, 2009, the jury acquitted Hancock of all criminal charges. (Am. Answ. ¶ 30.) The Commissioners did not attend her trial. On June 28, 2009, the Advisory Board voted to retain and keep Hancock in her current position as the Director of the St. Joseph County Community Corrections Program by a majority vote of 11 to 6. (*Id.* ¶ 31.)

On July 14, 2009, all 3 members of the Joseph County Commissioners, Robert Kovach, David Thomas, and Andrew Kostielney, voted to terminate Plaintiff, allegedly because they had lost confidence in her ability to perform her job functions. (Pl.'s Ex. L, July 14, 2009 Minutes; Kovach Dep., pp. 33, 34, 37, 39; Thomas Dep., p. 28; Kostielney Dep., p. 27.) According to Commissioner Thomas, he lacked confidence in Hancock's ability to perform her job because, as Director of Ducomb Center and the St. Joseph County Community Corrections Program, she would need to work with judges, prosecutors, and governmental agencies and he was worried that her indictment, and the press that was received in the newspapers during her trial, might hinder her ability to do such work. (Thomas Dep., pp. 28-30.) Thomas is a male Democrat who did not attend Hancock's trial, and he failed to review her personnel file before he voted to terminate Hancock's employment. (*Id.*, pp. 39, 60-61.) Thomas did know about the acquittal in the criminal mater and the Advisory Board's vote to retain Hancock. (*Id.*, pp. 25-26.) Thomas admits that he did not have personal knowledge about whether

9

Hancock could successfully perform her job duties and responsibilities because she did not do any work while he was a Commissioner. (*Id.*, p. 49.)

According to Commissioner Kostielney, he lacked confidence in Hancock's ability to perform the job functions because he thought Hancock would not be able to work well with several members of the St. Joseph County Community Corrections Program Advisory Board who had voted to terminate Hancock's employment, and she worked with some of those people on a daily basis. (Kostielney Dep., pp. 27-28.) Additionally, Kostielney was concerned that Plaintiff lacked sound judgment because she was not aware of her husband's activities (her husband was convicted). (*Id.*, p. 28.) Finally, Kostielney thought Hancock's job could be compromised if her husband entered the St. Joseph County Community Corrections Program or the Ducomb Center Program. (*Id.*, pp. 28-29.) Kostielney is a male Republican, and he also had not reviewed Hancock's personnel file or performance evaluations prior to his vote to terminate Hancock's employment. (*Id.*, pp. 19-20, 41.) He did not attend the trial, but he knew the Advisory Board had voted to retain Hancock. (*Id.*, p. 18.) Kostielney admits that when Hancock was first placed on unpaid suspension, the intent was to terminate her employment if she was convicted. (*Id.*, pp. 41-42.)

Finally, Commissioner Kovach, a male Democrat, also did not review Hancock's personnel file prior to July 14, 2009. (Kovach Dep., pp. 43-44, 48.) Kovach voted to terminate Hancock because he lacked confidence in her ability to perform the job functions. (*Id.*, p. 33.) Specifically, he believed she could not have continued to work in the corrections system and he discussed this with people in the criminal justice system whose opinion he valued. (*Id.*, pp. 33-34.) At the time of the vote, Kostielney believed that he had told Kovach that Hancock was a Republican. (Kostielney Dep., pp. 11-12.)

Hancock was eventually replaced by Alonzo Poindexter, an African American male, who was hired as the Manager of the Ducomb Center. (Kovach Dep., pp. 53-54.) At the time he was hired, Poindexter had a felony conviction on his criminal record. (Pl.'s Ex. N, Poindexter Docs.)

<u>First and Fourteenth Amendment Political Association Claim</u>

Hancock alleges political discrimination in violation of the First and Fourteenth Amendment (Am. Compl. Count I). Generally, "public employees may not be made to suffer adverse job actions because of their political beliefs." *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004) (citing *Rutan v. Republican Party of*

*Illinois*, 497 U.S. 62, 79 (1990); *Elrod v. Burns*, 427 U.S. 347, 357 (1976) ("There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of 'orderly group activity' protected by the First and Fourteenth Amendments. . . . [t]he right to associate with the political party of one's choice is an integral part of this basic constitutional freedom.")). It is therefore "well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment," with certain exceptions for employees in policymaking or confidential positions. *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). Here, neither party has contended that Hancock is a policymaker or in a confidential position. Thus, the Court may move on to whether the prima facie case has been satisfied.

In order to establish a prima facie case of politically motivated discharge, Hancock must prove by a preponderance of evidence that: (1) her conduct was constitutionally protected; (2) she suffered an actionable deprivation; and (3) the protected conduct caused the employer's action. *Gunville v. Walker*, 583 F.3d 979, 983-84 (7th Cir. 2009) (noting that prior to *Gross v. FBL Fin. Serv., Inc.*, 129 S.Ct. 2343 (2009), plaintiffs could prevail in a First Amendment § 1983 action by showing their speech was a substantial motivating factor in defendant's decision; however, *Gross* requires plaintiffs in federal suits to demonstrate but-for

causation unless a statute provides otherwise); *see also Fagbemi v. City of Chicago*, No. 08 C 3736, 2010 WL 1193809, at *6 (N.D. Ill. Mar. 19, 2010) (finding that, after *Gross*, to make a prima facie case of employment discrimination based on political affiliation, plaintiff must show that the protected conduct was a "but-for" cause of the adverse employment action).[1] If Hancock is able to show that her political affiliation was a but-for cause of her termination, the burden then shifts to Defendants to prove by a preponderance of the evidence that they had a legitimate, non-political reason for terminating her in order to avoid liability. *Hall*, 389 F.3d at 762; *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992).

For Hancock to prove that her political affiliation was a but-for cause in Defendants' decision to terminate her, she "must first prove that [Defendants] in fact knew of [it]." *Garrett*, 961 F.2d

---

[1]Like in *Gunville*, this Court notes that even if Plaintiff was held to the less stringent standard of proving her political affiliation was a substantial or motivating factor in her termination, Hancock's claim would still fail because she has not produced sufficient evidence that her affiliation with the Republican party was tied to Defendants' decision to terminate her employment. Even under the prior lesser standard, "[t]hat burden is not insignificant. A disgruntled employee fired for legitimate reasons would not be able to satisfy [her] burden merely by showing that [she] carried the political card of the opposition party or that [she] favored the defendant's opponent in the election." *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981). In other words, "[i]t is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers . . . ." *Hall*, 389 F.3d at 762.

at 632 (citing *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079 (7th Cir. 1992)); *see also Zerante v. DeLuca,* 555 F.3d 582, 585 (7th Cir. 2009) ("the threshold question is whether [defendants] even knew about [plaintiff's] political activities."); *see also Nelms*, 153 F.3d at 819 (in order to demonstrate defendants were motivated by political affiliation in determining which employees to terminate, plaintiff must first show defendants knew of his association with the Republican party).

Defendants contend that Hancock has offered no evidence, beyond mere speculation, that any of the decisionmakers were aware of her affiliation with the Republican party. In response, Hancock claims that Commissioner Kostielney, Kovach, and Thomas all knew she was a Republican when she was terminated. Kostielney (a Republican himself), testified during his deposition that he knew that Hancock was a Republican when he voted to terminate her. (Kostielney Dep., p. 10.) Specifically, Kostielney said a few days before the vote, a letter had been sent to him stating there was possible litigation due to Hancock's removal, and the letter identified Hancock as being a Republican. (*Id.*, pp. 10-12.) Kostielney's receptionist, who the Commissioners share, showed him the letter. (*Id.*, p. 11.) Kostielney said the other commissioners would have had access to look at the letter, but he did not know if they saw it. *Id.* When asked if he ever talked to Bob Kovach (a Democrat) about Hancock's political party, he replied, "I think the

comment I made was, after I'd heard that, that I was surprised that – that was the first time I'd guessed what party she was." (Kostielney Dep., pp. 11-12.) Kostielney said he "believe[d]" he told that to Kovach before the vote. (Kostielney Dep., p. 12.) Kostielney did not recall making any comments to Thomas (a Democrat) about Hancock's political party affiliation before the vote. (Kostielney Dep., p. 12.)

Importantly, both Kovach and Thomas testified during their depositions that they did not know Hancock's political affiliation when they voted to terminate her employment. (Kovach Dep., p. 71; Thomas Dep., pp. 18-19.) Moreover, Hancock herself admitted that neither Kovach nor Thomas had any animus with respect to her concerning her political affiliation. (Hancock Dep., pp. 40-41.) As to Kostielney, who undeniably knew her political affiliation, Hancock also concedes that he never showed her any animus based on her political persuasion. (Hancock Dep., pp. 38-39.) This is not surprising considering Kostielney was also a Republican, like Hancock.[2]

---

[2] It is somewhat perplexing that Hancock claims she was discriminated against on the basis of politics when the 3-member Board of Commissioners voted to terminate her, when one member (Kostielney), was the same political persuasion as Hancock. Hancock argues Kostielney's affiliation with the Republican party is irrelevant, because the Board of Commissioners could take action with a quorum - 2 Commissioners. (DE #36, p. 13.) However, the fact that one Commissioner with the same political affiliation also voted to terminate Hancock definitely does not help Hancock's claim of political discrimination.

Taking all inferences in favor of Hancock, at best, she might be able to prove to a factfinder that Kostielney (Republican) and Kovach (Democrat) knew her affiliation. However, there is no evidence whatsoever that Thomas (Democrat) was aware of Hancock's affiliation. Thomas specifically testified he did not know her political affiliation, and there is no evidence in the record that anyone told him Hancock was a Republican. Moreover, even if Hancock could demonstrate knowledge of her political affiliation on the part of Defendants, she must also show that they took action against her because of her political affiliation. *See Gunville*, 583 F.3d at 984. In doing so, Hancock cannot rely on "self-serving declarations based on nothing more than [her] own speculation." *Healy v. City of Chicago*, No. 00 C 6030, 2004 WL 1630578, at *6 (N.D. Ill. July 20, 2004); *see also Sybron Transition Corp. v. Security Ins. Co. Of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997) ("[a] party must present more than mere speculation or conjecture to defeat a summary judgment motion."). Here, Plaintiff has not pointed to anything in the record to show that Defendants fired her because she was a Republican.

In her response memorandum, Hancock argues that "[t]he presence of a similarly situated comparator can be used to link the termination with Hancock's political party affiliation" (DE #36, pp. 13-14), without citing any legal authority whatsoever. She then tries to show that Richard Hunt, a Democrat, was treated more

16

favorably under comparable circumstances. This type of analysis is not enough to make a prima facie showing. *See, e.g., McCarthy v. Chicago Park Dist.*, No. 87 C 8590, 1988 WL 56222, at *3 (N.D. Ill. May 18, 1988) ("In the absence of proof that the employer was motivated by political affiliation in favoring one employee over another, evidence of the unfavored employee's superior qualifications coupled with identification of the favored employee's political connections are insufficient to withstand summary judgment in a First Amendment claim challenging that favortism."). In sum, Hancock has failed to present evidence that politics was a but-for cause of any unfair treatment; therefore, she has failed to make out a prima facie case of discrimination. *See Gunville*, 583 F.3d at 984.

Finally, because Hancock has not shown that the St. Joseph County Community Corrections Advisory Board or the Board of Commissioners caused her to suffer a constitutional injury, there is no need to determine whether St. Joseph County had a "municipal policy or custom" of restraining its employees' First Amendment rights under *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *see Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008) (where plaintiff fails to establish deprivation of a constitutional right, *Monell* claims must also fail). Therefore, all Defendants are entitled to summary judgment on

Hancock's First and Fourteenth Amendment political association claims.

## 14th Amendment and Title VII Sex Claims

Hancock alleges sex discrimination in violation of the Fourteenth Amendment's Equal Protection clause and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* (Am. Compl. Counts II and IV). Both claims are analyzed under the same standard of proof. *See Williams v. Seniff*, 342 F.3d 774, 787-88 (7th Cir. 2003); *Salas v. Wisconsin Dep't Of Corrections*, 493 F.3d 913, 926 (7th Cir. 2007). Although a plaintiff may choose to establish a sex claim by either the direct or indirect method of proof, *see Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010), in this case, both parties agree that there is no direct evidence of discrimination. Under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Hancock has the initial burden of establishing a prima facie case of sex-based discrimination. *See Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). To establish a prima facie case of unlawful discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action, (3) she was meeting legitimate employment expectations at the time of termination, and (4) similarly situated individuals, outside of her respective protected class, were treated more favorably by the

employer. *Everroad v. Scott Truck Sys., Inc.*, 604 F. 3d 471, 477 (7th Cir. 2010). Defendants do not dispute that as a woman, Hancock is a member of a protected class or that she suffered an adverse employment action. Thus, the Court is left analyzing the last two prongs of the prima facie test. If Hancock establishes her prima facie case, the Defendants must state a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 433 U.S. at 802; *see also LaFary v. Rogers Group, Inc.*, 591 F.3d 903, 907 (7th Cir. 2010). If Defendants then offer a legitimate, non-discriminatory reason, the burden shifts back to Hancock to come forward with evidence showing the stated reason is pretextual, and that her gender was the real reason she was fired. *Id.*

Plaintiff lists the following facts in support of her argument that she was meeting legitimate expectations at the time of her termination. She is a member of the National Association for Professional Women, and has completed various certifications and training related to community corrections. (DE #36, p. 20.) Before her suspension and termination, she had never been formally disciplined. Additionally, she received positive performance evaluations from the Advisory Board in the past. On July 17, 2007 (approximately 2 years before she was terminated), Hancock received a performance evaluation from the Advisory Board of 4.5 out of 5 points, and was praised for her commitment and leadership. It is

undisputed that prior to her indictment, Defendants were very happy with Hancock as an employee. However, these arguments all go towards things in the past - the plaintiff bears the burden of showing that she was meeting her employer's expectations *at the time of* the adverse action. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007).

Importantly, following her acquittal, on June 28, 2009, the Advisory Board issued a majority vote (11-6) to retain her employment. (Am. Answ. ¶ 31; Pl.'s Ex. Q, Meeting Minutes.) Certainly this fact goes a long way towards proving that at least a majority of the Advisory Board considered Hancock to be meeting their expectations after she was acquitted, and possibly members of a jury could conclude the same.

This case is somewhat tricky because the reason the Commissioners gave for terminating Hancock's employment is that they lacked confidence in her ability to perform her job functions after her criminal indictment and acquittal - a really very subjective reason to fire Hancock. A subjective reason for termination is certainly not necessarily a cover-up for a discriminatory termination, but it does make it more difficult to determine if Plaintiff was meeting Defendants' legitimate job expectations. *See, e.g., Namenwirth v. Board of Regents of Univ. Of Wisconsin Sys.*, 769 F.2d 1235, 1243 (7th Cir. 1985) (finding in

a tenure case dealing with judgments about academic potential, that subjective assessments "should not be permitted to camouflage discrimination."). Case law's definition of "legitimate expectations" is sort of incongruous with the subjective reason of termination in this case – to qualify as legitimate expectations, the expectations must be reasonable and communicated to the employee. *See Dale v. Chi. Tribune Co.*, 797 F.2d 458, 463 (7th Cir. 1986). Here, none of the Commissioners attended the trial, or reviewed Hancock's personnel file. Only Commissioner Kostielney had some type of prior interaction with Hancock before he voted, and he testified that he thought Hancock did a good job. (Kostielney Dep., pp. 14-15.) Moreover, the time line of this case is somewhat vexing to the Court – Hancock was acquitted on May 29, 2009, the Advisory Board voted to retain her on June 28, 2009, and the Board of Commissioners voted to terminate her on July 14, 2009. It is unclear whether Hancock had even returned to her duties after the acquittal, or had an opportunity to prove that she could meet Defendants' legitimate expectations after she was acquitted. If Defendants truly lacked confidence in her ability to perform the job just because she went through the rigors of a criminal trial, why didn't they just fire her when she was indicted? If the result of the trial did not matter, why did they keep her on? Viewing the record and drawing all reasonable inferences in favor of Hancock, as this Court must at this stage of the proceedings, the Court

finds that a reasonable jury could conclude that Hancock was meeting the legitimate expectations of Defendants at the time she was terminated.

Because Hancock raised an inference that she was meeting her employer's legitimate employment expectations at the time of her termination, the next question for the Court is whether similarly situated employees were treated more favorably.  In determining whether other employees are similarly situated to Hancock, the Court "must look at all relevant factors, the number of which depends on the context of the case." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)).  Plaintiff cites to *Skorjanc v. Clarian Health Partners, Inc.*, No. 1:03-CV-1583-LJM-WTL, 2005 WL 552454 (S.D. Ind. Jan. 24, 2005), to set forth the parameters of this analysis.  "In disciplinary cases such as this, in which a plaintiff claims that she was disciplined by her employer more harshly than a similarly situated employee based on some prohibited reason, the plaintiff must show that she is similarly situated with respect to performance, qualifications, and conduct." *Skorjanc*, 2005 WL 552454, at *6 (citing *Radue*, 219 F.3d at 617).  However, "the similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone" *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010).  This typically "entails a showing that the two employees

dealt with the same supervisor, were subject to the same standard, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Skorjanc*, 2005 WL 552454, at *6 (citing *Radue*, 219 F.3d at 618). However, in *Skorjanc*, because the plaintiff's claim was based on allegedly disparate discipline under a policy that applied to her and three younger employees equally, that court found that issues of tenure, responsibility, salary differential and experience were not pertinent to an analysis of whether the employees were similarly situated. *Id.* at *7.

Although Plaintiff originally named 17 individuals who she claimed were similarly-situated employees treated more favorably, she narrowed down her argument in her response memorandum to two individuals: Richard Hunt and Kevin Klaybor. Klaybor works for the St. Joseph County Assessor's Office. (Hancock Dep., p. 80.) He was criminally charged relating to an alleged assault and battery of his girlfriend. (Pl.'s Ex. E, Klaybor Docs.) Like Hancock, he was initially placed on suspension without pay on October 21, 2008, following the allegations of criminal assault and battery. *Id.* Hancock alleges the suspension was conducted pursuant to the same policy used to suspend Hancock. However, before the outcome of his criminal trial, Klaybor was reinstated on May 11, 2009, to his position in the Assessor Office. *Id.* On August 28, 2009, Klaybor was found not guilty at trial. *Id.* Although he was employed by

the Assessor's Office, Commissioner Kovach gave the general testimony during his deposition that "we, [St. Joseph County Board of Commissioners] through the HR Department, deal with the majority of county employees" and the Board is in charge of the St. Joseph County Human Resources Department. (Kovach Dep., pp. 18, 22.) Nevertheless, as Defendants point out in their motion to strike, the St. Joseph County Assessor hires and fires his or her own deputies and employees. *See* Ind. Code §§ 36-2-16-4, 36-2-16-8. In fact, Kovach admitted that he did not know whether Klaybor was terminated as a result of being charged with a crime, because "[i]t's not my position to hire, fire or terminate Mr. Klaybor." (Kovach Dep., p. 67.) Indeed, Kovach testified that the Commissioners have no personnel authority over the Assessor's Office. *Id.* Therefore, the St. Joseph County Board of Commissioners does not have the authority to hire or fire St. Joseph County Assessor deputies and employees.

"Similarly situated" comparators "must be similar enough that any differences in their treatment cannot be attributed to other variables." *Silverman v. Board of Educ. Of City of Chicago*, 637 F.3d 729, 742 (7th Cir. 2011). Those variables can include distinctions in positions, performance, or supervisors. *Id.* (citing *Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009). For an individual to succeed on a discrimination claim based on alleged disparate treatment in discipline, they must show a

24

similarly situated employee held the same type of job, was disciplined by the same supervisor, and subject to the same standards. *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Discipline from a different supervisor "sheds no light" on the decision to discharge. *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Here, Klaybor held a different position (he was an employee of the St. Joseph County Assessor's Office while Hancock was the Director of Community Corrections and Manager of Ducomb Center), and had a different supervisor (the St. Joseph County Assessor). Given that Klaybor held a very different position (with different duties) from Hancock, and that the Board of Commissioners had no authority over Klaybor, and was not his supervisor, he is not "directly comparable to the plaintiff in all material respects," *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009) (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir. 2006)), and does not qualify as a similarly situated employee.

Hancock also claims that Richard Hunt is a similarly situated employee. Hunt, a male Democrat, is an Investment Officer that held an employment contract directly with the St. Joseph County Board of Commissioners. (Pl.'s Ex. O, Hunt Docs.) The St. Joseph County Board of Commissioners approve contracts for Investment Officers such as Hunt, and the Board also has the authority to end those contracts. (Kovach Dep., pp. 65-66.) In 2000, Hunt was

25

investigated by the St. Joseph County Prosecutor's Office for allegedly viewing and storing pornography on St. Joseph County computers, but this did not result in Hunt's termination. (Pl.'s Ex. O, Hunt Docs.) On February 28, 2006, Hunt was suspended "with pay" from his employment with St. Joseph County, and then he retired early. *Id.* Kovach testified that after Hunt was suspended, he became aware that Hunt was charged with Driving Under the Influence. (Kovach Dep., pp. 64-65.) As pointed out by Defendants, Hancock has failed to give this Court any details about Hunt being charged with DUI, including when the incident occurred, or how the charge was resolved. Additionally, there seems to be no context regarding how Hunt's investigation by the St. Joseph County Prosecutor's Office is related to Hancock's termination, which occurred 8 years later. Certainly, there is no evidence that Hunt engaged in similar conduct to Hancock, without being subject to the same level of discipline. Moreover, Hunt had nothing to do with the St. Joseph County Community Corrections Program or Ducomb Center, and as an investment officer, held quite a different position than Hancock. Employees are not similarly-situated where they did not engage in similar misconduct and are not disciplined by the same decisionmaker. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 667 (7th Cir. 2006); *Taffe v. Illinois Dep't of Employment Sec.*, 229 F.Supp.2d 858, 869 (N.D. Ill. 2002) (finding employees not similarly-situated where they held different

26

positions and were disciplined for different types of conduct). As such, Hunt does not qualify as a similarly situated employee either. Because Hancock has failed to identify a similarly situated co-worker, "we cannot compare [an employer's] treatment of [a plaintiff with that co-worker] . . . [if the plaintiff] fail[s] to meet her burden of establishing that [the co-worker] is a similarly situated employee."). *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

Because Hancock has failed to meet her prima facie case of sex discrimination, we need not address her pretext argument. *See, e.g., Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1036 (7th Cir. 1999) (abrogated on other grounds). Even assuming, *arguendo*, that Hancock had met her prima facie case of sex discrimination, this Court finds that her claims would still fail because Defendants have put forth a legitimate reason, not affiliated with her sex, to suspend and terminate Hancock. On July 14, 2009, the three Commissioners voted to terminate Hancock because they had lost confidence in her ability to perform her job functions. Specifically, Thomas believed the indictment would impede her ability to work with judges, prosecutors, and governmental agencies. (Thomas Dep., pp. 29-30.) Kostielney was concerned about her ability to work with members of the St. Joseph County Community Corrections Program Advisory Board who had voted to terminate her employment, and was concerned she lacked sound

judgment given that she was not aware of the activities undertaken by her husband in her home. (Kostielney Dep., pp. 27-29.) Finally, Kovach lacked confidence in her ability to perform her job functions, and thought she could not continue to work in the corrections system. (Kovach Dep., pp. 33-34.) Given the nature of Hancock's position in the corrections system, and the requirements of her job that she interact with other people in the system, these reasons for termination all seem legitimate, and not related to her sex. Moreover, Hancock simply has not shown that Defendants' proffered justifications for terminating her were actually pretextual – or dishonest and based on discriminatory intent. *Hobbs v. City of Chicago*, 573 F.3d 454, 461 (7th Cir. 2009) ("Pretext is a lie, specifically a phony reason for some action."); *see also Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 718 (7th Cir. 1999) (citations omitted) ("[I]t is not sufficient for the employee to show that his employer fired him for incorrect or poorly considered reasons. He must establish that the employer did not honestly believe the reasons it gave for terminating him."). Hancock has not shown that Defendants lied about their reasons for terminating her. In sum, summary judgment is warranted in favor of Defendants on Hancock's sex discrimination claims.


Fourteenth Amendment and Title VII Race Claims

Summary judgment is also appropriate on Hancock's Fourteenth Amendment race discrimination claim (Am Compl. Counts III and VII). Hancock is Caucasian. She alleges in the complaint that it was discriminatory for her to be terminated, while an African American employee (Alonzo Poindexter), was hired as Manager of Ducomb Center, despite the fact that he had been convicted of a felony in the past.[3] Additionally, Hancock points to Sharon McBride, an African American female, who replaced her as Director of Community Corrections.[4] As with her other claims of discrimination, there is simply no direct evidence to support such speculation - Hancock herself admits that Defendants made no statements of animus toward her with respect to her race, gender, age, or political affiliation. (Hancock Dep., pp. 37-41, 65, 91-92, 98-99.)

---

[3]Hancock gives no more detail about this felony conviction listed on Poindexter's application, which he "offered to explain." (Pl.'s Ex N, Poindexter Docs.) The Court does not know when it occurred, how much time had expired between the conviction and the employment, or what kind of felony the conviction was for. As such, this vague and undefined fact does not bolster Plaintiff's argument that she was discriminated against because of her race.

[4]Plaintiff also alleges that a background search conducted by Defendants showed that Sharon McBride had a criminal arrest in Utah. (DE #36, p. 25.) Hancock concedes she does not know if this background check is "accurate," (*Id.*), and without more details about when the alleged arrest occurred, if it was indeed the same Sharon McBride that was hired as Director of Community Corrections, and how the charge was concluded, again, this fact does not bolster Hancock's argument. Moreover, the Commissioners specifically voiced their concern in this case that Hancock would not be able to effectively work in the same system in which she was prosecuted. Because McBride's alleged arrest occurred in Utah, this is quite different from Hancock's situation.

Under the indirect method of proof, Hancock must show that she: (1) belongs to a protected class; (2) her performance met Defendants' legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly-situated others not in her protected class received more favorable treatment. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). In a reverse discrimination case, like this one, the first prong of the prima facie case is modified to require the plaintiff to "show background circumstances sufficient to demonstrate that the particular employer had reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 820 (7th Cir. 2006) (citations omitted) (internal quotations omitted). Hancock has presented no evidence of invidious discrimination, or even that any policies were in place to increase diversity. One fact that undercuts Plaintiff's argument is that on the day she was terminated, the County Commissioner also terminated the employment of Tori Malone, an African American female who was an assistant in the County's Human Resource Department. (Hancock Dep., p. 131; Kovach Dep., pp. 21-22, 17; Thomas Dep., p. 31; Kostielney Dep., pp. 46-47.)

It is true that there is no precise list of what constitutes background circumstances demonstrating something fishy going on. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 455 (7th Cir.

1999). However, the *Mills* court recognized that some circumstances which could go towards the background circumstances include evidence of schemes to fix performance ratings, that the hiring system seemed rigged because it departed from usual procedures, or where the person ultimately hired was clearly less qualified than the plaintiff. *Id.; see also DeWeese v. DaimlerChrysler Corp.*, 120 F.Supp.2d 735, 748 n.19 (S.D. Ind. 2000). Hancock has not produced evidence of schemes to unfairly fix her performance ratings, or a system rigged against her, or that she was terminated despite superior qualifications. Instead, the evidence in the record indicates that Hancock was suspended because she had been charged with a crime, and ultimately terminated because the Board of Commissioners lacked confidence in her ability to carry out her job functions. There is nothing "fishy" in the record to support Hancock's reverse race discrimination claim. Thus, Hancock has failed to establish a prima facie case of race discrimination.

Moreover, as discussed earlier in this opinion, even if Hancock had established her prima facie case, and even giving her the benefit of the doubt that she has raised an inference that she was meeting Defendants' legitimate job expectations, Defendants gave a legitimate reason for her suspension and termination. *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997) (employer prevails if it "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are

foolish or trivial or even baseless."). As such, summary judgment is warranted in favor of Defendants on Hancock's Fourteenth Amendment race claim.

### Age Discrimination Claim

Finally, Hancock brings a claim for age discrimination pursuant to 29 U.S.C. § 621 *et seq.* (the "ADEA") (Am. Compl. Count VI). The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of the employee's age. 29 U.S.C. § 623(a)(1). An employee must be at least 40 years of age to pursue an age discrimination claim. 29 U.S.C. § 631(a). Hancock was born in 1966, so the ADEA is applicable. To succeed, "a plaintiff must show that her termination . . . would not have occurred but for her employer's motive to discriminate on the basis of her age." *Horwitz v. Bd. of Ed. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 (7th Cir. 2001)(quotation omitted).

The Court notes that Defendants argued in their motion for summary judgment that Hancock's claim for age discrimination failed as a matter of law. Hancock failed to respond to this argument. It is well established that when a party fails to respond to an issue raised in a summary judgment motion, the issue is deemed abandoned and waived. *See, e.g., Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (holding claims not addressed in a

summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of North America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating arguments not presented to the court in response to a summary judgment motion are waived). Accordingly, Hancock has abandoned and waived her age discrimination claim. Even assuming, *arguendo*, that Hancock had not abandoned this claim, it would still be subject to summary judgment.

The same standards apply for proving discrimination in ADEA cases, Title VII, and Equal Protection cases. *See Williams*, 342 F.3d at 788 n.13 (noting the same standards apply to both Title VII and Section 1983 cases); *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 658 (7th Cir. 1991) (noting same standards apply to Title VII and ADEA cases). Unlawful discrimination may be proved through the direct method showing evidence of impermissible motive, or indirectly by the burden-shifting method outlined by the Supreme Court in *McDonnell Douglas*. Under either method, a plaintiff must prove "that age was the 'but-for' cause of the employer's adverse action." *Gross*, 129 S. Ct. at 2351.

The Court will first address whether Hancock has satisfied her burden of proof under the direct method. Under the direct method route, Plaintiff must present "evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two." *Sitar v. Indiana*

*Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003) (citation omitted). Under the direct method, Hancock may present direct or circumstantial evidence. Direct evidence essentially requires an admission by the decisionmaker that her actions were based upon discrimination. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Plaintiff can also seek to avert summary judgment by presenting enough circumstantial evidence to compose a "convincing mosaic" that allows a jury to infer intentional retaliation. *Volovsek v. Wisconsin Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680, 690 (7th Cir. 2003) (citation omitted).

Here, Hancock has offered no evidence that amounts to an admission of discriminatory animus based on her age. (Hancock Dep., pp. 18-21.) Viewing the facts in the light most favorable to Plaintiff, she has put forth no direct or circumstantial evidence from which a rational trier of fact could reasonably infer that Defendants terminated Hancock because of her age. As such, Plaintiff has failed to establish a prima facie case of age discrimination under the direct method.

As an alternative to the direct method of proof, Plaintiff may proceed under the *McDonnell Douglas* burden-shifting approach which sets forth a four-step inquiry. First, Plaintiff has the burden of establishing a prima facie case of discrimination by demonstrating that: "(1) she falls within the protected age group – that is, she

is at least 40 years old; (2) she performed her job satisfactorily; (3) despite her satisfactory performance, she suffered a materially adverse employment action; and (4) younger employees situated similarly to the plaintiff were treated more favorably." *Horwitz*, 260 F.3d at 610. Additionally, in the wake of *Gross*, it is not enough to show that age was *a* motivating factor – Hancock must show that, but for her age, the adverse action would not have occurred. *Gross*, 129 S.Ct. at 2351. If Hancock establishes a prima facie case, the burden of production shifts to Defendants who must "articulate a legitimate, nondiscriminatory reason" for the discharge. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876 (7th Cir. 2002). If Defendants make this showing, the burden then shifts back to Plaintiff to show that Defendants' proffered reason is merely a pretext for discrimination. *Id.*

Here, Hancock has failed to show that younger employees similarly situated to her were treated more favorably. Additionally, even under this indirect method, there are no facts in the record to show that Hancock was terminated because of her age. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 507-09 (7th Cir. 2009) (affirming summary judgment for employer where plaintiff failed to establish that his age was the "but for" cause of his termination). Finally, even assuming, *arguendo*, that Hancock could make out a prima facie case of age discrimination, there is nothing to establish that Defendants' reasons for terminating her

employment were not legitimate, and there is no evidence the reasons were pretextual.

Breach of Contract - State Law Claim

Hancock's final claim is a state law breach of contract claim (Am. Compl. Count VII). Upon due consideration, this state law claim is **DISMISSED WITHOUT PREJUDICE** because the federal claims have been dismissed prior to trial. 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

CONCLUSION

For the reasons set forth below, Defendants, St. Joseph County and the St. Joseph County Community Corrections Program's Motion for Summary Judgment (DE #33) is **GRANTED.** The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's federal claims (Am. Compl. Counts I-VI). The Clerk is **ORDERED** to **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claim for breach of contract (Am. Compl. Count VII). Defendants' Motion to Strike (DE #42) is **DENIED.** Furthermore, the Clerk is **ORDERED** to **CLOSE** this case.

DATED: July 6, 2011                    /s/ RUDY LOZANO, Judge

                                       United States District Court